## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARVIN BROWN,** | ) Case NO. 3:19-cv-96 |
| | ) |
| **Plaintiff,** | ) **Jury Trial Demanded** |
| | ) |
| **v.** | ) |
| | ) |
| **COCA-COLA COMPANY.** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

## **COMPLAINT**

Plaintiff, Marvin Brown ("Plaintiff"), by his attorney, Natalie Blackman, for his Complaint against

Defendant, Coca-Cola Company ("Defendant"), states as follows:

### **NATURE OF THE ACTION**

1.

Plaintiff brings this action under the Civil Rights Act of 1964, *42 U.S.C. Section 2000e* et seq., as

amended by the Civil Rights Act of 1991 ("Title VII"); *42 U.S.C. Section 1981* ("Section 1981")

to challenge Defendant's unlawful discrimination against him based on his race; and *La. R.S.*

*23:301*, et seq.

2.

Further, Plaintiff seeks relief for retaliation he suffered as a result of the unlawful discrimination.

3.

Further, Defendant harassed and subjected Plaintiff to a hostile work environment, despite

Plaintiff's complaints thereof, due to his race, and thus violated Title VII and *La. R.S. 23:301*, et

seq.

## **JURISDICTION AND VENUE**

4.

Jurisdiction is based on *28 U.S.C. §§ 1331* and *1343*, and principles of pendent and supplemental jurisdiction.

5.

Venue is proper in the Western District of Louisiana pursuant to *28 U.S.C. § 1391*(a).

## **PARTIES**

6.

Plaintiff has been employed as a driver with Defendant for the past 17 years. Plaintiff is an African-American male.

7.

Defendant is a corporation headquartered in Delaware with branch offices located in several states, including Louisiana.

## **FACTUAL ALLEGATIONS**

***Plaintiff was subjected to race discrimination, retaliation, and hostile work environment.***

8.

Plaintiff was a loyal and hard-working man who diligently worked for Defendant a driver for over 17 years.

9.

At all times relevant herein, Kenny Clark served as Plaintiff's supervisor. On the morning of November 5, 2016, Plaintiff began his shift at 2 a.m. Plaintiff had an initial load that needed to be delivered and completed it within about six (6) hours.  When he returned from his route, he was ordered to complete a "hot shot."  Hot shot is a term used by the employees to signify extra work.

10.

Plaintiff was told to retrieve a particular handheld that contained the details of his assignment. The new assignment involved a delivery to Target.  Only supervisors can upload new assignments onto each and every specific handheld. The supervisors have their own password that allows them to sign in and assign routes for each person.  The truck drivers themselves are only able to sign in to the handheld in which they are prompted with a "check out menu."

11.

The handheld menu is a checklist.  When each driver is set to begin his or her route, he or she must first do a material check.  During this setting, there is an individual whose job is to count the pallets in the truck to make sure that the correct amount is present.  If correct, a red seal is placed on the rear of the truck.  Each red seal bears multiple numerical digits.  The numbers displayed on each seal correspond to specific deliveries.  When the pallets on the truck are checked, the receipts on them should match the red seals that are placed on the outside of the truck when it is time for the trucks to leave the facility to make their deliveries.

12.

As a matter of keeping everything organized, when the supervisors create the delivery assignments, they use the last four digits that are on the red seals and upload them to a specific handheld.  The information that is entered is then printed and is placed on top of the pallets to be delivered.

13.

On November 5th, 2016, the assignment that Plaintiff received did not contain a seal number with four digits.  Rather, the seal number that was found on his handheld read "KKK."

14.

On November 5, 2016, there were two supervisors present.  One was Kenny Clark and the other

was Chad McMichael.  Either one, or both individuals, are responsible as to why "KKK"

appeared on Plaintiff's handheld.

15.

Plaintiff filed a complaint about the November 5, 2016 incident in February 2017 with Hope

Zettlemore, HR manager, because he felt his job was in jeopardy.  Plaintiff showed her a picture

of what the screen looked like on his handheld.  Later that evening Ms. Zettlemore contacted

Plaintiff and requested that he send her a picture of what he showed her when making the

complaint.  Plaintiff was informed that the complaint would be looked into and that he should not

mention this to anyone.  Further, Mrs. Zettlemore informed Plaintiff that he needed to inform Mr.

McMichael.

16.

Plaintiff was nervous about informing Mr. McMichael given his feelings about the work

environment but agreed to follow protocol. Mrs. Zettlemore showed Mr. McMichael the picture.

According to Plaintiff, the room got very silent as Mr. McMichael stared at the picture for a solid

30 seconds.  The next words spoken were those of Mr. McMichael.  Unprompted, he looked at

Plaintiff and said something along the lines of, "Don't worry, there won't be any retaliation."

17.

In the months following Plaintiff complaint to Human Resources, Plaintiff has been retaliated

against.  Prior to this incident, Plaintiff routinely worked 9.5 – 10 hours a day.  However, since

this incident, he has been given more work than normal as his working days have become longer.

His prior route, which Plaintiff drove for the past five years, consisted of approximately 11

businesses.  In the course of a week, he would go to each store every other day, but because of

the increased work, he was required to go to each store almost daily.

18.

To Plaintiff's knowledge there have not been any drastic personnel changes, nor have there been any personnel shortages that would require such a drastic change.

19.

Plaintiff had heard that he was going to be transferred. Plaintiff was clued in to this being the case because when he showed up to work, there were only four handhelds present.  His handheld, 105, which is assigned to him, was the only one missing.  He was told to instead take another handheld.

20.

Plaintiff's driving route also changed following his complaint.  He was required to drive outside of the inner city to far distances outside of Gonzalez, Louisiana.  His route is universally disliked by the other employees due to its distance and tedium.  No other truck drivers' routes changed.

21.

Plaintiff has received a cost of living raise for 16 years.  Following the incident that is the subject of this Complaint, he did not receive a cost of living raise.  Defendant alleged Plaintiff did not receive a cost of living raise due to a write up; however, Plaintiff has previously a cost of living raise despite having a write-up.

22.

Sometime in September 2017, when Plaintiff returned from a day off, he recalled that his truck (in which his name is printed on the actual truck), had the remarkably distinct stench of sardines. It is Plaintiff's belief that perhaps the juice from a can was poured and left to dry and rot in the truck while he was gone.  Plaintiff thoroughly searched the interior and no sardines were present. The unfortunate result of this is the fact that the truck smelled horribly for the next several days.

***Defendant Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct***

23.

Defendant's management directed and participated in the unlawful conduct by failing to prevent and promptly address any acts of race discrimination, harassment and/or retaliation. Defendant willfully acted with malice and reckless indifference to Plaintiff's federally protected rights.

***Plaintiff Suffered Damage***

24.

As a direct result of Defendant's unlawful conduct, Plaintiff has suffered from emotional distress, humiliation, and mental anguish.

25.

Plaintiff has suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct. In addition, Plaintiff has incurred attorneys' fees and costs based on Defendant's unlawful conduct.

***Punitive Damages***

26.

Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's protected rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### RACE DISCRIMINATION

### IN VIOLATION OF TITLE VII

27.

Plaintiff realleges paragraphs 1 through 26 and incorporates them by reference herein.

28.

Plaintiff was discriminated against, harassed and retaliated against because of his race in violation of Title VII of the Civil Rights Act of 1964 and *42 U.S.C. Section 2000e* et seq., which prohibits discrimination against any person with respect to terms, conditions or privileges of employment and prohibits retaliatory conduct for participating in protected activity.

29.

At all times herein, Plaintiff was qualified for his job. Plaintiff was employed by the Defendant for more than 17 years.

30.

Plaintiff experienced adverse employment action from the Defendant, including a change to the most disliked route, increased hours, and an increased workload. Plaintiff also was refused a cost of living raise, despite receiving one for the past 16 years.

## COUNT II

**RACE DISCRIMINATION**

**IN VIOLATION OF LA. R.S. 23:301**

31.

Plaintiff realleges paragraphs 1 through 30 and incorporates them by reference herein.

32.

Plaintiff was discriminated against, harassed and retaliated against because of his race in violation in violation of Louisiana Discrimination Law, *La. R.S. 23:301* et seq., which prohibits discrimination against any employee on the basis of race, color, religion, sex, national origin, pregnancy and related medical conditions, sickle cell trait, age and disability.

33.

By the conduct alleged herein, Defendant subjected Plaintiff to race discrimination by permitting unlawful employment practices in violation of *La. R.S. 23:301* et seq.

34.

By the conduct  alleged  herein, Defendant subjected  Plaintiff  to race discrimination.

35.

At all times herein, Plaintiff was qualified for his job. Plaintiff had been employed by the Defendant for more than 17 years.

36.

Plaintiff experienced adverse employment action from the Defendant, including a change to the most disliked route, increased hours, and an increased workload. Plaintiff also was refused a cost of living raise, despite receiving one for the past 16 years.

## COUNT III

**RETALIATION**

**IN VIOLATION OF TITLE VII**

37.

Plaintiff realleges paragraphs 1 through 36 and incorporate them by reference herein.

38.

Title VII, specifically *42 U.S.C. Section 2000e-3*, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

39.

By their conduct alleged herein, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII by using Plaintiff's complaints of discriminatory conduct by Kenny Clark and Chad McMichael. The retaliatory conduct included, but was not limited to, a change to the most disliked route, increased hours, and an increased workload. Plaintiff also was refused a cost of living raise, despite receiving one for the past 16 years.

## COUNT IV

**HOSTILE WORK ENVIRONMENT**

40.

Plaintiff realleges paragraphs 1 through 39 and incorporate them by reference herein.

41.

Defendant repetitively harassed Plaintiff, despite his complaints about same, including demeaning race-based conduct and other acts of harassment and retaliation tantamount to a hostile work environment, and thus violated Title VII.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court find in his favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violates Title VII and the relevant Louisiana anti-discriminatory provisions, *La. R.S. 23:301 et seq.;*

b. Declare that the acts and conduct of Defendant violates Title VII, and the anti- retaliation provisions of those laws;

c. Award Plaintiff the value of all loss income and front and/or back pay lost as a result of Defendant's unlawful conduct;

d. Award Plaintiff the value of all future compensation and future benefits he will lose as a result of Defendant's unlawful conduct;

e. Award Plaintiff damages for emotional distress, humiliation, mental anguish, loss of enjoyment of life, and inconvenience;

f. Award Plaintiff compensatory damages;

g. Award Plaintiff punitive damages;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief deemed just, equitable, and proper by this Court.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury

on all questions of fact raised by the Complaint.

Respectfully submitted,

s/ Natalie Blackman

Natalie Blackman #35662
8550 United Plaza Blvd #702
Baton Rouge, LA 70809
Phone: (318) 639-4529
Fax: (888) 463-4952

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 13, 2019, I electronically filed the foregoing with the Court's CM/ECF

system, which will send a notice of electronic filing to all counsel of record.

s/ Natalie Blackman