UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN BROWN     CIVIL ACTION

VERSUS

COCA-COLA BOTTLING COMPANY     NO.: 3:19-00096-BAJ-EWD
UNITED, INC.

## RULING AND ORDER

Before the Court is the **Rule 12(b)(6) Motion to Dismiss Claims or Alternatively Rule 56 Motion for Summary Judgment (Doc. 10)** filed by Defendant, Coca-Cola Bottling Company United, Inc. ("CCBCU"). CCBCU seeks the dismissal of claims brought by Marvin Brown ("Plaintiff"). Oral Argument is not required. For the following reasons, the **Motion to Dismiss (Doc. 10)** filed by CCBCU is **DENIED**.

### I. BACKGROUND

This matter arises from an incident occurring at Plaintiff's place of work on November 5, 2016. (Doc. 7 at ¶ 9). Plaintiff is a delivery driver for CCBCU. (*Id.* at ¶ 6). After completing his first shift of the day, Plaintiff was ordered to complete a "hot shot"[1] and was told to retrieve a handheld scheduling device that contained the details of his new assignment. (*Id.* at ¶ 9-10). Plaintiff claims that CCBCU's procedure requires that once a supervisor completes a review of the materials needed

---

[1] Plaintiff claims that a "hot shot" refers to an extra work assignment. (Doc. 7 at p. 2).

for the route, a red seal bearing multiple digits is placed on the rear of the truck. (*Id.* at ¶ 11). The last four digits are uploaded to a handheld device. (*Id.* at ¶ 12). On November 5, 2016, the assignment Plaintiff received did not contain the last four digits of a seal number but instead read "KKK." (*Id.* at ¶ 13). Two supervisors were present at that time: Plaintiff's supervisor Kenny Clark, as well as Chad McMichael. (*Id.* at ¶¶ 9, 14).

Plaintiff filed a complaint regarding the incident in February 2017 with CCBCU's Human Resources manager Hope Zettlemore. (*Id.* at ¶ 15). Plaintiff and Zettlemore showed a photograph taken at the time of the incident to McMichael, who responded that there "would not be any retaliation."[2] (*Id.* at ¶ 16).

In the months following Plaintiff's complaint to Human Resources, Plaintiff alleges that he has been retaliated against. (*Id.* at ¶ 17). Plaintiff complains of unexpected assignments to less desirable shifts, not receiving the raise he customarily received each year for the last 16 years, and being made to take more shifts. (*Id.* at ¶¶ 17-22).

Plaintiff filed this lawsuit against Defendant for violating Title VII of the Civil Rights Act of 1964 ("Title VII")[3] and the Louisiana Employment Discrimination Law ("LEDL").[4] (*Id.* at ¶¶ 28, 32). Plaintiff alleges that Defendant's management directed and participated in the unlawful conduct by failing to prevent and promptly address

---

[2] Plaintiff does not specify to whom McMichael was referring when he promised that there "would not be any retaliation."

[3] 42 U.S.C. § 2000e *et seq.*

[4] La. Stat. Ann. § 23:301 *et seq.*

any acts of race discrimination, harassment, and/or retaliation. (*Id.* at ¶ 23). Plaintiff asserts that Defendant willfully acted with malice and reckless indifference to Plaintiff's federally protected rights. *Id.* Plaintiff also alleges that he suffered from emotional distress, humiliation, and mental anguish as a direct result of Defendant's unlawful conduct. (*Id.* at ¶ 24). Finally, Plaintiff alleges that he suffered loss of enjoyment of life, inconvenience, and other non-pecuniary losses and incurred attorneys' fees and costs as a direct result of Defendant's unlawful conduct. (*Id.* at ¶ 25).

Defendant moves for Rule 12(b)(6) dismissal of the Amended Complaint ("Complaint") on four grounds: 1) Plaintiff has not properly pled administrative exhaustion; 2) the Title VII claim was not filed in a timely fashion; 3) Plaintiff did not provide CCBCU with pre-suit notice of his LEDL claim and; 4) the Complaint fails to set forth an actionable claim for racial harassment under Title VII and the LEDL (Doc. 10-2 at pp. 1, 4-7).

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for

3

relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

Rule 56 does not require that discovery be completed prior to a court issuing a ruling on a motion for summary judgment. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). However, at this stage, the Court does not have enough information to confidently render a ruling on Defendant's motion for summary judgment, and finds that discovery is necessary in this matter. Therefore, the Court will not consider the Motion for Summary Judgment at this time until discovery has been completed.

## III. DISCUSSION AND ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendant claims that Plaintiff has failed to plead that he exhausted available administrative remedies before pursuing this lawsuit. (Doc. 10-2 at p. 4). "Prior to filing a Title VII case in federal court, . . . the plaintiff must exhaust his

4

administrative remedies by filing a charge with the EEOC against his employer." 42 U.S.C. § 2000e-5(e)(1); *Davis v. Ft. Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018).

Plaintiff's complaint does not make an affirmative representation that he exhausted his administrative remedies. However, Plaintiff has remedied this deficiency by filing an affidavit alleging that he completed the administrative process. (Doc. 11-1). In light of Plaintiff's affidavit declaring that he received a right-to-sue letter before filing this lawsuit, Defendant's motion is DENIED on this ground.

### B. Timeliness of Title VII Claim

Defendant next argues that even if Plaintiff has properly pled administrative exhaustion, Plaintiff's Title VII claim is untimely. (Doc. 10-2 at p. 4). Defendant asserts that Plaintiff filed this lawsuit one hundred days after the EEOC's November 5, 2018 issuance of the Dismissal and Notice of Rights. Title VII provides that claimants have ninety days to file a civil action based on an EEOC charge of discrimination after the EEOC sends a right-to-sue letter. Defendant cites *Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986), wherein the United States Court of Appeals for the Fifth Circuit held that a suit was untimely when filed 92 days after the receipt of the right-to-sue letter. The Court held that "the 90-day period of limitation established by 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Id.*

Plaintiff argues that the motion to dismiss for untimeliness is inappropriate because he did not *receive* the right to sue letter until November 14, 2018 and filed

5

his initial complaint on February 13, 2019, which places him within the 90-day window to file based on an EEOC charge of discrimination. (Doc. 11 at p. 2). Plaintiff cites non-binding case law from the Tenth Circuit, which states that a presumption of receipt is appropriate whenever the actual receipt date is unknown or disputed. *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001). That presumption of receipt may be rebutted by an affidavit "stating personal knowledge of the receipt date." *Id.* Plaintiff also cites another non-binding case in which the District Court for the Western District of Louisiana determined that a genuine issue of material fact existed, and therefore summary judgment was inappropriate, because Plaintiff's affidavit alleged that he did not receive a right-to-sue letter. *Cargo v. Kansas City S.*, No. CIV.A 05-2010, 2009 WL 799695, at *2 (W.D. La. Mar. 24, 2009).

In this case, Plaintiff has also submitted an affidavit in opposition to Defendant's motion stating that he received his right-to-sue notice on November 14, 2018. (Doc. 11 at p. 4). Plaintiff therefore asserts that the presumption of receipt rule applied in other cases is inapplicable here, and therefore dismissal of the claim is inappropriate.

While the parties have not presented any precedential case law on whether the presumption of receipt rule is applicable when a plaintiff submits a statement asserting that they received a right-to-sue letter later than seven days after it was allegedly sent, other circuits have found that the presumption of receipt rule can be rebutted by evidence that a) the letter was mailed later than its typewritten date or

6

b) the letter was received by the plaintiff later than presumed. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996).

The affidavit supplied by Plaintiff is enough to survive Defendant's motion to dismiss for untimeliness. Taking Brown's affidavit as true, which the Court must do for the purpose of resolving a motion to dismiss under Rule 12(b)(6), the Title VII claims are not time-barred because the Complaint was filed within 90 days of the date on which Brown alleges to have received his right to sue notice. Therefore, Defendant's motion to dismiss is DENIED on this ground.

### C. Pre-Suit Notice for LEDL Claim

Defendant also asserts that Plaintiff's state law claim should be dismissed for failing to meet a pre-suit notice requirement. (Doc. 10-2 at p. 6). The LEDL contains a pre-suit notice requirement which requires a party who intends to pursue court action to give written notice detailing the alleged discrimination at least thirty days before filing suit. La. Stat. Ann. § 23:303. Defendant asserts that the failure to provide notice required under the LEDL warrants dismissal of Plaintiff's claims. (Doc. 10-2 at pp. 6-7).

Defendant is correct that prior to filing a suit for discrimination under the LEDL, the party intending to sue must give written notice to the opposite party at least thirty days before filing suit. La. Stat. Ann. § 23:303. However, Louisiana state and federal courts applying Louisiana law have held that the filing of an EEOC charge of discrimination satisfies this notice requirement, but that the state claim is

limited to the alleged discrimination detailed in the EEOC charge. *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011).

In this case, Plaintiff has alleged that he filed an EEOC charge of discrimination, and Defendant does not assert that the alleged discrimination detailed in the EEOC charge differs from that in the later action. Therefore, the EEOC charge filed by Plaintiff satisfies the pre-suit notice requirement of the LEDL. The motion to dismiss the LEDL claim is DENIED on this ground.

**D. Failure to State a Claim Under Title VII or the LEDL**

Defendant's final ground for dismissal of Plaintiff's claim is that Plaintiff has failed to state sufficient facts to allege a claim for racial harassment under Title VII and the LEDL. (Doc. 10-2 at p. 7). Defendant asserts that the alleged actions do not relate to his race and do not rise to a level of actionable harassment. *Id.* Defendant claims that the only possible race-based incident is the appearance of "KKK" on a seal, and that there are no other allegations that could possibly be interpreted as being racially discriminatory. (Doc. 10-2 at p. 9).

Defendant argues that harassment must be severe in order to be actionable under Title VII. *Id.* In *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001), the Supreme Court of the United States ruled that "simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment." The Court also held that "harassment is actionable under Title VII only when it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive

8

working environment." *Id.* The totality of the circumstances are considered in this inquiry, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance." *Id.* at 270-71. Defendant also cites *Oncale v. Sundowner Offshore Services, Inc*, 523 U.S. 75, 81 (1998), in which the Supreme Court held that alleged behavior must be "severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive."

In addition, Defendant points to *Merriell v. Slater*, No. CIV. A. 97-0800, 1998 WL 88857, at *4 (E.D. La. Feb. 27, 1998), in which the district court granted a motion to dismiss the plaintiff's racial harassment claim because "the plaintiff had not alleged any facts which indicate that the conduct of which she complains was racial in nature, as would be evidenced by racially derogatory speech or action." In that case, the plaintiff alleged she had been called a derogatory term primarily used against women by a co-worker and that this comment constituted racial harassment. The court found this allegation insufficient to state a claim of racial harassment and stated that the plaintiff is required to actually plead "racist speech or conduct." Plaintiff must show that "'but for' [his] race, [he] would have experienced a different workplace." *Medley v. Louisiana State Dep't of Justice*, No. CIV.A. 09-4570, 2010 WL 4363735, at *3 (E.D. La. Oct. 21, 2010).

Given the record of the case, as well as the standard for 12(b)(6) motions, which requires that all inferences be taken in a light most favorable to the non-moving

9

party, dismissing Plaintiff's Title VII claims at this stage is inappropriate. Applying the "sufficiently severe" factors to this case and observing the situation under the reasonable person standard, Plaintiff's harassment claim is severe enough to survive the motion to dismiss. While the specific conduct that is "racial" in nature may not have been frequent, the other harassing actions that occurred were quite persistent. Plaintiff's driving route appears to have changed indefinitely and his work hours were increased. The placement of a "KKK" symbol on a machine intended for an African-American worker could be seen as "physically threatening or intimidating" to a reasonable person. Additionally, the act of pouring sardine juice in a worker's truck could also be seen as intimidating. Plaintiff has sufficiently pleaded that all of the alleged acts unreasonably interfered with his work performance and contributed to a hostile work environment.

Defendant claims that even if such actions occurred, they were not "racial" in nature. However, the Court finds that Plaintiff has made sufficient allegations that the triggering event, that his handheld devices read "KKK," was an incident of race-based harassment. If not for the initial action taken against Plaintiff on behalf of his race, Plaintiff would not have complained, and none of the subsequent harassing actions would have occurred. Defendant's motion to dismiss is DENIED.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Rule 12(b)(6) Motion to Dismiss Claims is DENIED.**

IT IS FURTHER ORDERED that Defendant's **Rule 56 Motion for Summary Judgment** is DENIED WITHOUT PREJUDICE.

Baton Rouge, Louisiana, this 9th day of December, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA